## PAUL KOCH

v.

## THE NATIONAL UNION BUILDING ASSOCIATION ET AL.

*Landlord and Tenant—Lease—Renewal—Agreement for—Corporations
—President—Authority of—Statute of Frauds—Agency—Evidence.*

1.   The president of a corporation has not, as a matter of law, and merely by reason of his holding such office, power or authority to execute deeds, mortgages or leases of the real estate thereof.

2.   The presumption that an act done by the president of a corporation is legally done and binding upon it, arises only in the absence of legislative enactment or provision made in its by-laws, touching the subject-matter of the act in question.

3.   The president of a corporation may perform all acts which are incident to the trust reposed in him, such as custom or necessity has imposed upon his office, without express authority.

4.   The fact that a contract made by an agent without authority, has been performed by the other party, can not, of itself, render the contract binding on the person for whom the agent assumed to act.

5.   Upon a bill filed for a specific performance of an alleged agreement by the president of a corporation owning a certain building, to renew a lease, this court declines, in view of the fact that such officer did not have authority to grant such renewal, to interfere with the decree dismissing the same.

[Opinion filed March 10, 1890.]

APPEAL from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. RUBENS & MOTT, for appellant.

Messrs. HAMLINE & SCOTT, for appellees.

MORAN, J.   One Henry Breuggestadt conducted a saloon and restaurant at No. 70 Adams street, in Chicago, of which premises he had a lease from the National Union Building Association, which was to expire April 30, 1889.   In September, 1888, appellant was in negotiation for the purchase of said saloon and restaurant business, and the stock and fixtures

thereof, and was willing, as he claims, to purchase the same for the sum of $4,500 provided he could obtain a renewal of the lease of the premises for two or three years, but was unwilling to purchase unless he could obtain such renewal. Before making the purchase, appellant claims that he called on Frank N. Gage, the President of the National Building Association, and stated to him that he was about to buy out said Breuggestadt for said sum of $4,500, of which the greater part was to be paid for the good will of said business, and that he would not buy unless he could obtain a renewal of the lease for two or three years; and thereupon said Gage promised such renewal on condition that appellant would keep as good a place as Breuggestadt kept; that if he did so there would be no trouble about a lease, and he could have it in January, 1889. That he relied upon said promise of said Gage, and purchased the business and fixtures, paying therefor the said sum of $4,500, and that the lease of said Breuggestadt was assigned to him with the consent of said National Building Association, and thereafter he paid to said association the rent reserved in said lease. That in January, 1889, appellant demanded the lease for three years so promised him by Gage, and was told by Gage that the lease would be prepared.

In February he was notified by the secretary of the association that he would be expected to vacate the premises at the expiration of his lease, April 30, 1889, the association having decided not to rent to any person for saloon purposes. Appellant claims that he kept as good a place as Breuggestadt had kept, and that it was not claimed by the association that he had not, or that he failed to keep an orderly place. After the notice to surrender possession, appellant made efforts to obtain a lease for an additional period, but without success, whereupon he filed his bill for specific performance of the alleged agreement with Gage for a lease, setting out in substance the facts above stated, and claiming that it would be a fraud on him if the association did not execute a renewal of the lease, and would cause great loss and damage. The bill was answered by the association and by Gage, and in both answers it is denied that any such agreement as appellant

claims was ever made with Gage, and it is also set up that Gage had no power or authority, as president of the association, to make leases or agreements for leases for the real estate of the association. On the hearing there was a conflict in the evidence as to whether Gage ever agreed that appellant should have a renewal of the lease; and in the brief the counsel have discussed very fully the testimony relating to that issue, and the question whether the purchase by appellant of the premises, relying on such a promise of renewal, and taking an assignment of the then existing lease, was such a part performance as would take such a verbal agreement without the operation of the statute of frauds.

We do not find it necessary, in the view we are compelled to take of the case, to pass upon this question of fact, or to consider whether, assuming the agreement to have been made by Gage as appellant contends it was, equity would, upon the facts alleged, enforce the contract on the ground of its part performance.

The decree of the court below dismissing the bill must be sustained, without reference to the statute of frauds, because of the lack of power or authority in the president of the association to bind it by an agreement to make or renew a lease of its estate.

The president of a corporation has not, as a matter of law, and merely by reason of his holding said office, power or authority to execute deeds, mortgages or leases of the real estate of the corporation. Hoyt v. Thompson, 19 N. Y. 207.

"The implied powers of the president of a corporation depend upon the nature of the company's business, and the measure of authority delegated to him by the board of directors. It seems that a president has no greater powers by virtue of his office merely, than any other director of the company, except that he is the presiding officer at the meeting of the board." Morawetz on Corporations, Sec. 537.

There is no proof in the record as to what the business of the National Union Building Association is, but it is shown that its business, whatever it may be, is carried on under certain by-laws, Sec. 9 of which by-laws relates to the duty of the

president, and, among other things, provides that "He shall execute all bonds, contracts, leases or other instruments required to be made or executed by authority of the board for and on behalf of the association, which shall also be signed by the secretary."

Here we find the authority of the president with reference to executing leases defined, and, while it is true that it has been said by the Supreme Court of this State that an act done by the president will be presumed to be legally done and be binding on the body, that rule applies "in the absence of legislative enactment or provision made in the by-laws." Smith v. Smith, 62 Ill. 493.

The business affairs of corporations are controlled exclusively by their boards of directors, and such a board may undoubtedly invest the president with authority to bind the corporation by deed or lease, either by express resolution or by an acquiescence in his assumption of authority in that respect, which would justify persons who dealt with him in the inference that he had such authority in fact. So, if the act is one incident to the execution of the trust reposed in him, such as custom or necessity has imposed upon his office, he may perform it without express authority. Mitchell v. Deeds, 49 Ill. 416.

As we understand Union Mutual Life Ins. Co. v. White, 106 Ill. 67, it simply holds the corporation bound by acts which, from the course of its business, were within apparent power of the president and general agent when those officers were acting for the corporation in a State where the corporation was doing business by comity, the home or residence of the corporation being in another State.

Appellant sought to prove that Gage had been recognized by the association as having authority to lease its tenements, and that various transactions for leases had been made by him with tenants without consultation with or dictation from the board but in this he, in our opinion, signally failed. It is very clearly shown that in every one of the instances mentioned the transaction was with the board, and that Gage never, in any instance, assumed to contract for the corporation, but

only to negotiate and to present matters to the board for approval, and that he was never, in any manner, held out as having power or authority to make leases or contracts binding on the corporation.   It is not contended that the alleged contract of appellant with Gage for a renewal of the lease was in any manner ratified or adopted by the corporation.   The case, then, in its most favorable aspect for appellant is, that a contract was made with him by one who assumed authority without having it in fact, to give him a renewal of the lease, and that, relying on the contract, he has changed his position for the worse, and done, as he claims, acts in performance of the contract.

The fact that the contract made by an agent without authority has been performed by the other party, can not, of itself, render the contract binding on the person for whom the agent assumed to act.   The difficulty is that the contract to lease was not binding because of lack of authority in Gage to make it, and without reference to the fact that the statute of frauds requires such a contract to be in writing.

The decree of the Circuit Court will therefore be affirmed.

<i>Decree affirmed.</i>